UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JESUS ANGEL SANCHEZ BOLIVAR,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, DESERT VIEW FACILITY, ADELANTO ICE PROCESSING CENTER, et al.,<br><br>Respondents. | Case No. 5:26-cv-06138-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## PROCEEDINGS

On October 18, 2026, petitioner Jesus Angel Sanchez Bolivar ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), accompanied by five exhibits (Docket No. 1-1).

/ / /

/ / /

/ / /

/ / /

/ / /

The Petition alleges the following claim for habeas relief: Petitioner's detention violates his right to due process under the Fifth Amendment; and (2) Petitioner's detention violates the Immigration and Nationality Act ("INA"). (Docket No. 1 at 9-10).[1]

On October 26, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 4), Respondents filed an Answer to the Petition ("Answer") (Docket No. 8), and one supporting exhibit (Docket No. 8-1). In the Answer, Respondents acknowledge that Petitioner appears to be entitled to an initial bond hearing pursuant to Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026) ("Rodriguez Vazquez"). (Docket No. 8 at 2 ["Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, [183 F.4th 1160] (9th Cir. 2026)[.]"]). In the Answer, Respondents also state that: "[T]o the extent a Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." (Id.).

On October 26, 2026, Petitioner filed a Reply. (Docket No. 9).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND[2]

Petitioner is a Venezuelan national who entered the United States on August 30, 2024 on a B-2 Visa at the Miami International Airport. (Petition at ¶ 1, Exhibit ["Exh."] A at 2). Customs and Border Protection ("CBP"), an arm of the Department

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

[2] The Background is based on the allegations in the Petition.

of Homeland Security ("DHS"), inspected Petitioner and admitted him until February 28, 2025. (Id.).

On February 2, 2025, prior to the expiration of his B-2 Visa and within the applicable one-year deadline, Petitioner filed a Form I-589, Application for Asylum and Withholding of Removal, with U.S Citizenship and Immigration Services ("USCIS"), seeking asylum due to his fear of political persecution in Venezuela. (Id. at ¶ 2, Exh. B at 4). As part of his application for asylum, Petitioner provided his biographical details to Respondents, including his address and contact information. (Id.).

Petitioner's asylum claim was based on his fear of political reprisal in Venezuela. (Id. at ¶ 3). Petitioner was an opposition pro-democracy activist who protested for free and fair elections. (Id.). Petitioner had been under surveillance by the Venezuelan government since 2019, but such threats increased during the election of 2024, ultimately prompting him to fear returning to the country. (Id., Exh. C at 5-11).

While waiting for his asylum claim to be adjudicated, Petitioner obtained valid work authorization. (Id. at ¶ 4, Exh. D at 13). To obtain work authorization, Petitioner filed a Form I- 765, Application for Employment Authorization, under the C08 Eligibility Category. (Id.). As with his asylum application, he provided Respondents with his address, phone number, and other contact information. (Id.). Petitioner subsequently received his Employment Authorization Document ("EAD") and worked as a warehouse contractor. (Id.).

Through Petitioner's numerous interactions with Respondents and their subsidiary agencies - including his initial entry into the United States permitted by CBP, and his asylum application and related filings with DHS - Respondents were made aware of Petitioner's location and his ongoing presence in the United States.

(Id. at ¶ 5). Respondents did not take any steps to arrest Petitioner or to remove him from the country until September of 2026. (Id.).

Following his initial entry into the United States and his subsequent period of living here while waiting for his affirmative asylum application to be adjudicated, Petitioner developed a strong protected liberty interest in his freedom. (Id. at ¶ 6). He has worked, paid taxes, and forged community ties.

On September 23, 2026, Respondents detained Petitioner after he took a domestic flight. (Id. at ¶ 7). They approached him at the airport in Los Angeles in civilian clothing and detained him. (Id.). Prior to arresting him, Respondents did not provide him with a warrant for his arrest, any notice, a pre-deprivation hearing, or an opportunity to be heard regarding his detention. (Id.). Respondents did not determine Petitioner to be a risk of escape prior to his detention. (Id.).

As of the date of the instant filing, Petitioner remains in immigration detention. (Id. at ¶ 8, Exh. E at 15).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to

a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## IV.

## DISCUSSION

### A. Petitioner is Entitled to Habeas Relief.

Petitioner claims that his arrest and detention on September 23, 2026, without any pre-deprivation notice or hearing, constituted a violation of due process under the Fifth Amendment. (See Petition at 5, 7, 9-10). Petitioner alleges that he lawfully entered the United States on August 30, 2024, on a B-2 Visa, and thereafter applied for asylum on February 2, 2025. (Petition at 2). Petitioner's visa expired on February 28, 2025. (Docket No. 1-1 at 2). Respondents do not dispute these facts. Thus, for more than a year and a half, Petitioner has been living openly in the community pursuing lawful immigration relief. He has followed the law and pursued his available remedies, all with the knowledge and permission of Respondents. He applied for and obtained employment authorization during the pendency of his asylum application. (Petition at 2). He has paid taxes and forged community ties, all while providing the government with current contact information and location. (Id.). During this period, the government elected not to detain

Petitioner despite exercising authority over him through the asylum process and, instead, allowed him to remain at liberty in the community.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. J.G.G., 604 U.S. at 673 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "[T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, Case No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

Here, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for his re-detention, based on the government's decision not to detain him or otherwise impede his liberty while exercising authority over him for purposes of adjudicating his application for immigration relief. Indeed, a number of federal courts in California have found a protectable liberty interest in nearly identical circumstances. See Tzoc v. LaRose, Case No. 26-cv-3965-GPC-VET, 2026 WL 2227161, at *2-3 (S.D. Cal., Aug. 3, 2026); Dai v. Janecha, Case No. 5:26-cv-03966-PD, 2026 WL 2164154, at *1-2 (C.D. Cal., July 24, 2026); E.E.O.H. v. Noem, Case No. 1:26-cv-01266-JLT-SAB-HC, 2026 WL 850363, at *4-5 (E.D. Cal. Mar. 26, 2026), report and recommendation adopted, 2026 WL 967670 (E.D. Cal. Apr. 9, 2026); Villanueva-Montanez v. Lyons, Case No. 2:26-cv-00954-DAD-CKD, 2026 WL

797930, at *1 (E.D. Cal. Mar. 23, 2026); Kalkan v. Chestnut, Case No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026); Kharitonova v. Albarran, Case No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026).

As demonstrated in the cases cited above, courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them. See also Gagik T. v. Chestnut, et al, Case No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal., June 25, 2026) (granting release to a noncitizen who entered the country on a visitor visa, applied for asylum, was granted employment authorization and remained out of custody for six years); Kharitonova, 2026 WL 531441 at *2 ("Although the Government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual who was initially detained.").

The Court finds the reasoning of these cases persuasive. Petitioner entered the United States lawfully more than two years ago on August 30, 2024, pursuant to a B-2 Visa. (Petition at ¶ 1). Thereafter, Petitioner applied for asylum while his Visa was still valid, and proceeded through the established lawful process to apply for asylum protection. (Id. at ¶ 2).

Petitioner has affirmatively interacted with the government through the asylum process, providing his address and other information to USCIS. (See Docket No. 1-1 at 4, 6-10). He has applied for and received employment authorization. (Id. at 2). There is nothing in the record to indicate that Petitioner failed to comply with the requests of USCIS related to his asylum application, failed to comply with any of his obligations regarding the asylum process, or that he avoided contact with the government.

/ / /

Petitioner has lived openly in the community, at a known address, establishing a life in his community, with no violations of the law. (Id.). Respondents have had full knowledge of Petitioner's identity, immigration status and location during the pendency of his immigration application, or since February 2, 2025. With this knowledge, the government has continuously elected not to detain Petitioner while exercising authority over his legal proceedings, all the while permitting him to remain free and at liberty while his application was pending.

Considering the arc of the government's sustained conduct towards Petitioner, the Court finds that Petitioner developed a substantial liberty interest in continued release.

In light of this protected liberty interest, the Court turns to consider what process he is owed before the government may take that liberty interest away. Petitioner claims that due process was required before he was taken into custody. (Petition at 5, 7, 9-10). He thus argues that the appropriate habeas remedy is for him to be released back to the community. (Id. at 10). The Court agrees.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three factors set forth in Mathews:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

/ / /

/ / /

/ / /

As discussed below, the Court finds that each of the three Mathews factors supports Petitioner's constitutional right to process before he was re-detained.

With regard to the first factor, as discussed above, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in the community and pursuing his application for immigration relief. See Giovanny Hernan Ortega v. Erik Bonnar, et al, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that the petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Turning to the second Mathews factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide him with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). And where a petitioner has not received a hearing or other process prior to the revocation of his liberty – as Petitioner alleges - "the risk of an erroneous deprivation [of liberty] is high." Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Finally, Respondents have not articulated any countervailing government interest—the third Mathews factor—that supports providing this process only after Petitioner has been detained. Due process "usually" requires a hearing before the State deprives a person of liberty or property. Zinermon, 494 U.S. at, 127. Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. Id. at 128. But neither of those exceptions appears to be applicable to the instant circumstances. Respondents have not argued that Petitioner was an imminent risk of flight or that

some other exigency required his immediate arrest and detention at Los Angeles International Airport on September 23, 2026.

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." Ortega, 415 F. Supp. 3d at 970; see also John J. Morrissey, et al v. Lou B. Brewer, et al, 408 U.S. at 471, 483 (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the Mathews factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

With respect to the appropriate remedy for such a due process violation, many courts considering this issue have found that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner "will have already suffered the harm" that such petitions raise—his potentially erroneous detention. See e.g., Hasratyan v. Bondi, Case No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); Saballos Rosales v. Noem, Case No. 5:26-CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting TRO and finding that "the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention process she was owed.") (citing Hasratyan); Charan S. v. Warden, CA City, Case No. 1:26-cv-3017, TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial

constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months"); Domingo v. Kaiser, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14 2025); see also Riveros-Sanchez v. City of Easton, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

As with similar cases in this Circuit, the Court finds that the appropriate remedy in this case is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on whatever conditions may have been previously imposed. See e.g., E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); Jasbin v. Warden, Case No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that the petitioner was only entitled to bond hearing as a Maldonado Bautista class member); Prior v. Chestnut, Case No. 1:25-cv-01131-JLTEPG-HC, 2026 WL 309560, at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

## V.
## ORDER

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; and (2) that a writ of habeas corpus be issued (a) requiring Respondents to immediately release Petitioner Jesus Angel Sanchez Bolivar (A# 235-526-917) from custody, subject to the same conditions (if any) that he was subject to at the time he was arrested and re-detained, (b) ordering Respondents to return all property confiscated from Petitioner during his arrest and processing into detention; (c) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining

Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (d) ordering Respondents to file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: October 29, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE